[Cite as *State v. Nastick*, 2017-Ohio-5626.]

STATE OF OHIO ) IN THE COURT OF APPEALS
)ss: NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

| | | |
|---|---|---|
| STATE OF OHIO | | C.A. No. 28243 |
| Appellee | | |
| v. | | APPEAL FROM JUDGMENT ENTERED IN THE |
| ADAM D. NASTICK | | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | | CASE No. CR 2015 03 0816 |

DECISION AND JOURNAL ENTRY

Dated: June 30, 2017

---

SCHAFER, Judge.

{¶1} Defendant-Appellant, Adam Nastick, appeals his convictions in Summit County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

{¶2} On March 1, 2015, at approximately 6:58 p.m., Sergeant DeWitt of the Ohio State Highway Patrol observed Nastick operating a silver Nissan above the posted speed limit. Sergeant DeWitt followed the vehicle for a short time before activating the overhead lights on his cruiser and initiating a traffic stop. At the beginning of the stop, a dispatcher informed Sergeant DeWitt that Nastick had an active concealed carry permit. Upon establishing contact with Nastick, Sergeant DeWitt informed him why he had stopped his vehicle and detected an odor of alcohol emanating from inside the vehicle. After about two minutes, Sergeant DeWitt asked Nastick if he had a weapon in his vehicle, to which Nastick replied he did.

{¶3} Sergeant DeWitt then asked Nastick to exit the vehicle and perform standardized field sobriety testing. Sergeant DeWitt stated he observed six out of the six possible clues on the horizontal gaze nystagmus test (HGN), four out of eight possible clues on the walk-and-turn test, and one out of four clues on the one leg stand test. Following the administration of the field sobriety tests, Sergeant DeWitt placed Nastick under arrest for OVI. Consequently, Sergeant DeWitt conducted an inventory search of Nastick's vehicle before it was towed. Sergeant DeWitt located Nastick's firearm within the center console of his vehicle during an inventory search.

{¶4} The Summit County Grand Jury indicted Nastick on the following charges: (I) improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(D)(1), a felony of the fifth degree; (II) carrying concealed weapons in violation of R.C. 2923.12(B)(1), a misdemeanor of the first degree; and (III) operating a vehicle under the influence of alcohol (OVI) in violation of R.C. 4511.19(A)(1)(a), a misdemeanor of the first degree. Nastick pleaded not guilty and the matter proceeded through the pretrial process.

{¶5} Nastick later filed a motion to suppress. After a hearing was held, Nastick also filed a motion to dismiss and a supplemental motion to suppress. The trial court subsequently denied Nastick's motions. Pursuant to a Crim.R. 11 plea agreement, the State dismissed the charge of improperly handling firearms in a motor vehicle and in exchange, Nastick pleaded no contest to the charges of carrying concealed weapons and OVI. The trial court accepted Nastick's no contest plea and found him guilty of both charges.

{¶6} Nastick filed this timely appeal, raising two assignments of error for our review.

II.

**Assignment of Error I**

**The trial court erred in failing to grant Mr. Nastick's motion to dismiss after the state lost materially exculpatory evidence.**

{¶7}    In his first assignment of error, Nastick contends that the trial court erred when it failed to grant his motion to dismiss after the state failed to preserve materially exculpatory evidence.  For the following reasons, we disagree.

{¶8}    An appellate court reviews a trial court's decision on a pre-trial motion to dismiss de novo.  *State v. Franchi*, 9th Dist. Summit No. 27797, 2016-Ohio-1195, ¶ 5.  The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects an accused from being convicted of a crime when the State either fails to preserve materially exculpatory evidence or destroys, in bad faith, potentially useful evidence.  *California v. Trombetta*, 467 U.S. 479, 489 (1984); *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).  Thus, "the suppression of *exculpatory* evidence that is material to guilt or punishment violates due process without respect to whether the [S]tate acted in bad faith." (Emphasis sic.)  *State v. Jalowiec*, 9th Dist. Lorain No. 14CA010548, 2015-Ohio-5042, ¶ 48.  However, "[w]hen the State fails to preserve evidence that is merely '*potentially useful*,' a defendant must demonstrate that the [S]tate acted in bad faith." (Emphasis added.)  *Id*., quoting *Youngblood* at 58; *See also State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, ¶ 9-10.

{¶9}    "Specific tests are applied to determine whether the state's failure to preserve evidence rises to the level of a due process violation.  The test depends on whether the lost or destroyed evidence involves 'material exculpatory evidence' or 'potentially useful evidence.'"  *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 73 (2012).  Accordingly, we must first determine whether the missing dash-cam video in this case is material to guilt or punishment or

merely potentially useful. *See Geeslin* at ¶ 13. Potentially useful evidence is evidence "of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Youngblood* at 57. Exculpatory evidence, on the other hand, is defined as "evidence favorable to the accused which, if disclosed and used effectively, * * * may make the difference between conviction and an acquittal." *State v. Whalen*, 9th Dist. Lorain No. 08CA009317, 2008-Ohio-6739, ¶ 8, quoting *State v. Rowe*, 92 Ohio App.3d 652, 666 (10th Dist.1993). Evidence is materially exculpatory when: (1) the evidence possesses an exculpatory value that was apparent before the evidence was destroyed, and (2) is of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable means. *Trombetta* at 489. The Supreme Court of Ohio has held that, if "missing evidence would not 'challenge the *substance* of the allegations [,]' it 'could not have been materially exculpatory evidence.'" *Franchi* at ¶ 6, quoting *Geeslin* at ¶ 13.

{¶10} In this case, Sergeant DeWitt testified that it appeared the recording system in his cruiser was working properly at the time of the stop since it recorded a video of Nastick's transport from the police station to the jail. Sergeant DeWitt stated that although the stop and field sobriety tests were recorded on his cruiser's dash-cam, the copy that was provided to the State was "not readable" or "corrupted." However, he also stated that he had no knowledge of when the damage to the recording occurred and that he had not viewed the video. Sergeant DeWitt attempted to produce another copy of the dash-cam video, but found the video was not available in the highway patrol's main database. As a result, the State was not able to provide the dash-cam video to Nastick. On cross-examination, Sergeant DeWitt agreed that "whatever happened [to the video] happened in the state's database."

{¶11} Although no one ever viewed the video in this case, there is no dispute that the dash-cam video captured the traffic stop at issue and subsequent field sobriety tests. "[S]uch direct evidence is by its very nature either inculpatory or exculpatory, or some combination of the two, and there is likely no 'test' of that footage that would be necessary to yield a result that would exonerate the accused." *State v. Durham*, 8th Dist. Cuyahoga No. 92681, 2010-Ohio-1416, ¶ 16. Generally, the defendant bears the burden of proving that evidence was materially exculpatory. *State v. Glunt*, 10th Dist. Franklin No. 09AP-962, 2010-Ohio-3024, ¶ 10. However, "in cases where a defendant has made a specific request for preservation of a particular piece of evidence and the evidence has been subsequently lost or destroyed, whether inadvertently or not, the burden shifts to the state to show that the evidence was not material." *Id.* citing *Columbus v. Forest*, 36 Ohio App.3d 169, 173 (10th Dist.1987); *See State v. Dunn*, 9th Dist. Wayne No. 03CA0037, 2004-Ohio-2249, ¶ 63 ("If the State acts in bad faith by ignoring a valid request to preserve evidence, the burden shifts to the State to show that the evidence was not exculpatory."); *contra State v. Beavers*, 2d Dist. Montgomery No. 24994, 2012-Ohio-6222, ¶ 16 (declining to adopt the burden-shifting framework of *Forest* and holding that the burden is on the defendant to show that evidence is not materially exculpatory). Nonetheless, the burden only shifts to the State when the defendant has made a specific request regarding a particular piece of evidence. *Glunt* at ¶ 10.

{¶12} Although the State does not dispute that Nastick requested the State to produce the dash-cam video of the stop and field sobriety tests at issue, the State contends in its response to the motion to dismiss that since Nastick only requested the video be produced and preserved, the burden did not shift to the State to establish that the video was not materially exculpatory. However, this distinction is not significant since "[b]y asking the state to produce the evidence,

[Nastick] implicitly asked the state to preserve it until it was produced." *State v. Benton*, 136 Ohio App.3d 801, 806 (6th Dist.2000). As such, we conclude that the State bears the burden of establishing that the missing dash-cam video in this case was not materially exculpatory. *See Glunt* at ¶ 10.

**{¶13}** Sergeant DeWitt testified during the suppression hearing that he observed Nastick driving above the posted speed limit at eighty-three miles per hour in a fifty-five mile per hour zone. He then initiated a traffic stop of Nastick's vehicle. A dispatcher informed Sergeant DeWitt at the beginning of the stop that the Law Enforcement Automated Data System (LEADS) indicated that Nastick had an active concealed carry permit. Upon establishing contact with Nastick, Sergeant DeWitt informed him why he had stopped his vehicle and asked Nastick if he was aware that he had been speeding. Nastick replied he was not. At that time, the Sergeant detected a strong odor of alcohol emanating from inside the vehicle and observed Nastick's eyes to be red, bloodshot, and glassy and his speech to be slow. Sergeant DeWitt asked Nastick for his driver's license and insurance and observed that Nastick had tactile difficulties when searching for his documentation. Sergeant DeWitt then asked Nastick if he had been consuming any alcoholic beverage, to which Nastick responded he had a couple of drinks. After about two minutes, Sergeant DeWitt asked Nastick if he had a weapon in his vehicle. Initially, the Sergeant testified that Nastick stated that "he didn't think that he had one in the car." However, upon cross-examination, the Sergeant was allowed to refresh his recollection by reading his report. Sergeant DeWitt subsequently changed his testimony, testifying that Nastick stated "he did have one in the center console" of his vehicle.

**{¶14}** Sergeant DeWitt then asked Nastick to exit the vehicle and asked him to perform standardized field sobriety testing. The Sergeant stated that he administered the tests in

substantial compliance with the National Highway Traffic Safety Administration (NHTSA) guidelines. Sergeant DeWitt stated he observed six out of the six possible clues on the HGN test, four out of eight possible clues on the walk-and-turn test, and one out of four clues on the one leg stand test. On the walk-and-turn test, the Sergeant stated that Nastick did not touch heel to toe, stepped off of the line while walking, and turned the wrong way. However, he could not recall how far apart Nastick's feet were when they did not touch heel to toe or how far "off line" Nastick stepped. On the one leg stand test, Sergeant DeWitt observed Nastick to sway while balancing. Although the Sergeant could not recall "exactly what [Nastick's] swaying was," he stated that the clue was "evident and noticeable."

{¶15} Following the administration of the field sobriety tests, Sergeant DeWitt placed Nastick under arrest for OVI. Consequently, Sergeant DeWitt conducted an inventory search of Nastick's vehicle before it was towed. During the inventory search, Sergeant DeWitt located Nastick's firearm within the center console of his vehicle.

{¶16} Nastick did not offer any evidence or witness testimony at the suppression hearing to refute Sergeant DeWitt's testimony. Furthermore, there is no evidence in the record to suggest that the dash-cam video would contradict Sergeant DeWitt's testimony. Accordingly, we conclude that the State met its burden of demonstrating that the missing dash-cam video was not materially exculpatory. *See State v. Cahill*, 3d Dist. Shelby No. 17-01-19, 2002-Ohio-445, ¶ 18 (determining that the State met its burden of demonstrating that a deleted videotape did not have a materially exculpatory value given that the testimony of the troopers involved went undisputed); *State v. McClain*, 2d Dist. Montgomery No. 26764, 2016-Ohio-838, ¶ 42 (concluding that the record did not support a conclusion that a missing video was materially

exculpatory where the only evidence in the record came from a police officer's testimony and there was no evidence to suggest the video would contradict that testimony).

{¶17} Moreover, a missing recording "shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Lupardus*, 4th Dist. Washington No. 08CA31, 2008-Ohio-5960, ¶ 11. Here, we cannot find that the missing recording is material to guilt or punishment for the OVI charge since the record still shows combined factors that would support a finding of guilt even if the recording of the stop and field sobriety tests were excluded. *See id*. at ¶ 12-13 (concluding that an erased tape was not "material either to guilt or to punishment" when "the record still shows combined factors" that support a finding of guilt). Specifically, the Sergeant testified that Nastick: (1) was speeding; (2) had the odor of alcohol on his breath; (3) had tactile difficulties with his movements; (4) had red, bloodshot, and glassy eyes; (5) had slow speech; (6) admitted to drinking alcohol; and (7) had performed poorly on the field sobriety tests.

{¶18} Therefore, we conclude that the State met its burden of showing that the missing dash-cam video was not materially exculpatory.

{¶19} However, as the missing dash-cam video could have been useful to Nastick's defense, we must next determine if the State acted in bad faith. *Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239 at ¶ 14. Nastick has the burden of establishing that the State's failure to preserve the dash-cam video was done in bad faith. *See Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577 at ¶ 77. "The term 'bad faith' generally implies something more than bad judgment or negligence." *Id.* at ¶ 81, quoting *State v. Tate*, 5th Dist. Fairfield No. 07 CA 55, 2008-Ohio-3759, ¶ 13. "It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also

embraces actual intent to mislead or deceive another." *Id.*, quoting *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St.3d 272, 276 (1983).

{¶20} Sergeant DeWitt testified that the recording system in his cruiser is automatically initiated when the overhead lights or the siren are activated and will continue to record until it is shut off manually. Unfortunately, even though he followed standard operating procedure by activating his lights and sirens, the copy of the recording that was provided to the State was "not readable" or "corrupted." He further stated that it appeared the recording system was working properly at the time of the stop since it recorded a subsequent video of Nastick's transport from the police station to the jail. The Sergeant stated he did not watch the video before attempting to make a copy for the State. When Sergeant DeWitt then attempted to produce another copy of the dash-cam video, the video did not exist in the highway patrol's main database. On cross-examination, Sergeant DeWitt agreed that "whatever happened [to the video] happened in the state's database." As a result, the State was not able to provide the dash-cam video to Nastick. Again, Nastick did not offer any testimony or evidence at the hearing to contradict the Sergeant's testimony. Therefore, we conclude that based on the above circumstances, Nastick has failed to demonstrate bad faith by the State.

{¶21} Accordingly, Nastick's first assignment of error is overruled.

### Assignment of Error II

**The trial court erred when it found the trooper had probable cause to effectuate a warrantless arrest for OVI.**

{¶22} In his second assignment of error, Nastick contends that the trial court erred when it denied his motion to suppress. Specifically, Nastick argues that the State failed to present competent credible evidence from which the trial court could have determined that Sergeant DeWitt had probable cause to arrest him for OVI because the Sergeant (1) did not observe him

driving erratically; (2) did not observe him "pull over incorrectly;" (3) had "little independent recollection of the indicators of impairment he allegedly observed;" and (4) could not testify "to any level of specificity" with regard to the alleged indicators of impairment. We disagree.

{¶23} Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court assumes the role of trier of fact and is in the best position to evaluate witness credibility and resolve factual issues. *State v. Mills*, 62 Ohio St.3d 357, 366 (1992). Accordingly, an appellate court must accept a trial court's findings of fact when they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. However, accepting those facts as true, the appellate court must independently determine, without deference to the trial court's conclusion, whether those facts satisfy the applicable legal standard. *Burnside* at ¶ 8, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

{¶24} The Fourth Amendment to the United States Constitution and Section 14, Article 1 of the Ohio Constitution protect citizens from unreasonable searches and seizures. "In determining whether police had probable cause to arrest an individual for operating a vehicle while under the influence of alcohol, we must consider the totality of the facts and circumstances existing at the moment of arrest." *State v. Walters*, 9th Dist. Medina No. 11CA0039-M, 2012-Ohio-2429, ¶ 9, citing *State v. Homan*, 89 Ohio St.3d 421, 427 (2000) (superseded by statute on other grounds as set forth in R.C. 4511.19(D)(4)(b)). "Probable cause exists if, 'at the moment of arrest, the police had sufficient information, derived from reasonable trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence.'" *Id.* "The amount of evidence necessary for probable cause to suspect a crime is being committed is less evidence than would be necessary to support a

conviction of that crime at trial." *State v. McGinty*, 9th Dist. Medina No. 08CA0039-M, 2009-Ohio-994, ¶ 11. Furthermore, "the totality of the facts and circumstances can support probable cause for an arrest even in the absence of the administration of field sobriety tests." *State v. Russo*, 9th Dist. Medina No. 09CA0009-M, 2009-Ohio-6914, ¶ 10.

{¶25} As discussed above, there was testimony presented at the suppression hearing that Sergeant DeWitt observed that Nastick was speeding, had the odor of alcohol on his breath, had tactile difficulties with his movements, had red, bloodshot, and glassy eyes, had slow speech, admitted to drinking alcohol. Additionally, Sergeant DeWitt testified that he observed six out of the six possible clues on the HGN test and four out of eight possible clues on the walk and turn test. On the walk and turn test, the Sergeant stated that Nastick did not touch heel to toe, stepped off of the line while walking, and turned the wrong way. Nonetheless, he could not recall how far apart Nastick's feet were when they did not touch heel to toe or how far "off line" Nastick stepped. The Sergeant stated that these tests were administered in compliance with the National Highway Traffic Safety Administrative (NHTSA) Guidelines.

{¶26} In light of the totality of the circumstances before the trial court, we cannot say the trial court erred in concluding that Sergeant DeWitt had probable cause to arrest Nastick for OVI.

{¶27} Therefore, Nastick's second assignment of error is overruled.

III.

{¶28} Nastick's assignments of error are overruled and the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

12

---

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

THOMAS M. DICAUDO and BENJAMIN R. SORBER, Attorneys at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.