[Cite as *State v. Wilson*, 2020-Ohio-158.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF WAYNE | ) | |

STATE OF OHIO

    Appellee

v.

SCOTT D. WILSON

    Appellant

C.A. No.    18AP0037

APPEAL FROM JUDGMENT
ENTERED IN THE
WAYNE COUNTY MUNICIPAL COURT
COUNTY OF WAYNE, OHIO
CASE No.    2017 TR-C 009806

DECISION AND JOURNAL ENTRY

Dated: January 21, 2020

CARR, Judge.

{¶1}    Defendant-Appellant Scott D. Wilson appeals the judgment of the Wayne County Municipal Court. This Court affirms.

I.

{¶2}    Around midnight on September 24, 2017, Deputy Daniel Broome and Sergeant Charles Ellis with the Wayne County Sheriff's Office were dispatched to an address on Sterling Road to investigate a suspected prowler. They arrived in separate vehicles. While Deputy Broome was speaking with someone outside the residence, Sergeant Ellis crossed the road to the nearby cornfield to further investigate. Sergeant Ellis saw a vehicle coming towards him at a high rate of speed. According to Sergeant Ellis, the driver honked the vehicle's horn and the vehicle swerved toward him. Sergeant Ellis had to jump the ditch into the cornfield to avoid being hit. Deputy Broome heard the car horn and observed the vehicle travel back into its lane. Sergeant Ellis got into his marked cruiser and began to follow the vehicle. Sergeant Ellis

observed the vehicle turn on to Shorle Road without using a turn signal. Sergeant Ellis then activated his overhead lights; however, the vehicle did not stop until after turning into a driveway, again without utilizing a turn signal. The driver was identified as Wilson. Ultimately, Wilson was arrested for driving while under the influence of alcohol. A warrant was obtained and a blood draw was performed on Wilson.

{¶3} Wilson was charged with violating R.C. 4511.19(A)(1)(a). On September 28, 2017, Wilson's counsel filed a motion to preserve evidence, which was granted the next day. Subsequently, Wilson filed a motion to suppress. On December 4, 2017, Wilson was additionally charged with violating R.C. 4511.19(A)(1)(f) (prohibited blood alcohol content). On December 12, 2017, Wilson filed a motion to dismiss alleging that Deputy Broome's body camera video was deleted in violation of Wilson's due process rights. Several exhibits were attached to the motion. A hearing was held on both Wilson's motion to dismiss and the motion to suppress. At the hearing, it was discovered that there also may have been body camera video from Sergeant Ellis that was not disclosed. The trial court denied the motion to dismiss but continued the hearing on the motion to suppress. The trial court ordered the prosecution to determine whether any other videos were available, and, if not, why they were not available.

{¶4} In March 2018, Wilson filed a second motion to dismiss after he learned that Sergeant's Ellis's body camera video had also been deleted. The matter proceeded to a combined hearing on the second motion to dismiss and the motion to suppress. The trial court denied both motions. Wilson thereafter entered a plea of no contest to the R.C. 4511.19(A)(1)(f) charge and the remaining charge was dismissed. The trial court subsequently sentenced Wilson.

{¶5} Wilson has appealed, raising a single assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED TO THE PREJUDICE OF MR. WILSON WHEN IT DENIED MR. WILSON'S MOTIONS TO DISMISS BECAUSE OF THE STATE OF OHIO'S FAILURE TO PRESERVE EVIDENCE AFTER ORDERED TO PRESERVE EVIDENCE BY THE TRIAL COURT IN VIOLATION OF THE DUE PROCESS RIGHTS OF MR. WILSON AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶6} Wilson argues in his sole assignment of error that the trial court erred in denying Wilson's motions to dismiss.

{¶7} "We review the trial court's decision on a pre-trial motion to dismiss de novo." *State v. Jackson*, 9th Dist. Summit No. 28625, 2018-Ohio-19, ¶ 26, quoting *State v. Franchi*, 9th Dist. Summit No. 27797, 2016-Ohio-1195, ¶ 5. "[T]he suppression of materially exculpatory evidence violates a defendant's due process rights, regardless of whether the state acted in good or bad faith." *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, ¶ 7. However, "[u]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.* at ¶ 9, quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988).

{¶8} "Generally, the defendant bears the burden of proving that evidence was materially exculpatory." *State v. Nastick*, 9th Dist. Summit No. 28243, 2017-Ohio-5626, ¶ 11. "However, in cases where a defendant has made a specific request for preservation of a particular piece of evidence and the evidence has been subsequently lost or destroyed, whether inadvertently or not, the burden shifts to the state to show that the evidence was not material[ly exculpatory]." (Internal quotations and citation omitted.) *Id.*

{¶9}   When missing evidence would not have been used to acquit the appellant of the charge itself, and, instead, would have been used only with regard to the validity of the stop that led to appellant's arrest, the missing evidence could not have been materially exculpatory evidence. *Geeslin* at ¶ 13.  In that case, the evidence could only have been potentially useful.  *Id.*

### Burden

{¶10}   Wilson first argues that the trial court, in ruling on both motions to dismiss, failed to make an explicit determination as to which party had the burden to demonstrate whether the video was materially exculpatory.  Thus, Wilson asserts that a remand is required so that the trial court can apply the correct law.  Here, while the trial court did not specify which side had the initial burden, the trial court also did not use any language suggesting it applied an incorrect burden, nor does Wilson assert that the entry affirmatively indicates that the trial court applied the incorrect burden.  Given our de novo review, and in the absence of evidence that the trial court incorrectly applied the law, we will proceed to review the merits of the motions and conclude a remand is unnecessary.

### Deputy Broome's Video

{¶11}   Deputy Broome testified that on the day of Wilson's arrest, he was investigating a suspected prowler on Sterling Road.  Deputy Broome was wearing a body camera attached to the left side of his abdomen, which he activated when he arrived at the scene.  While Deputy Broome was speaking with one of the witnesses, he observed Sergeant Ellis walk across the road to the cornfield.  Deputy Broome was facing westbound when he heard a car horn.  When he looked up, he saw a vehicle traveling westbound at a high rate of speed.  The vehicle had already passed Sergeant Ellis.  Deputy Broome initially observed the vehicle traveling in the wrong lane but then saw it return to the correct lane of travel.  Deputy Broome had no other contact with the

vehicle and turned off the body camera when he finished up at the residence. Deputy Broome estimated that his camera may have captured Wilson's vehicle for two to three seconds.

{¶12} Deputy Broome used the video to verify his observations and from that information created a supplemental narrative to his report. That narrative was read into the record and is very similar to Deputy Broome's testimony at the first hearing.

{¶13} Because nothing ever came of the investigation at the residence, as per policy, Deputy Broome placed the body camera video in the category "[g]eneral case reports and contact." Those videos are automatically deleted after 30 days. Additionally, this video was filed in the case for the prowler, not Wilson's case. The record discloses that, in addition to the general order for the preservation of evidence, within the thirty-day time frame, Wilson's attorney requested that the prosecution provide him with a copy of the body camera video from Deputy Broome. Prior to the expiration of the 30-day window, the prosecution asked Deputy Broome for help in locating the video because the prosecutor could not find it. Deputy Broome discovered the prosecutor had difficulty finding it because it was filed with the prowler case. Deputy Broome then provided the correct case number to the prosecution. Subsequently, the prosecution indicated that it still had not received the video, and, at that point, Deputy Broome forwarded the request to Captain Hunter. Captain Hunter ultimately indicated that, because of the video's categorization, it was automatically deleted after 30 days. Deputy Broome maintained that he did not tamper with the video or make any attempts to hide or dispose of the video improperly.

{¶14} Because the record is clear that Wilson specifically requested Deputy Broome's body camera video, and did so prior to its automatic deletion, the burden shifted to the state to show that the evidence was not materially exculpatory. *See Nastick*, 2017-Ohio-5626, at ¶ 12.

Given Wilson's charges, driving while under the influence of alcohol and driving with a prohibited blood alcohol content, we can only conclude that the State met its burden. At the time of the first hearing, Deputy Broome's testimony was unchallenged. Nothing in his testimony evidences that the video would contain any exculpatory evidence. "[T]he missing evidence would not have been used to acquit [Wilson] of the impaired-driving charge itself. Rather, it would have been used only with regard to the validity of the stop that led to [Wilson's] arrest." *Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, at ¶ 13. "[T]herefore, [] the missing evidence in this case could not have been materially exculpatory evidence * * *; but was instead potentially useful evidence." *Id.*

{¶15} Because the evidence was only potentially useful, Wilson bore the burden of demonstrating that the police acted in bad faith in the deletion of the video. *Id.* at ¶ 9. "The term bad faith generally implies something more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another." (Internal quotations and citations omitted.) *Nastick* at ¶ 19. Here, while the video clearly should have been preserved, under the circumstances before us, we cannot say that Wilson demonstrated that police acted in bad faith. Deputy Broome attempted to assist the prosecution in procuring the video, yet, unfortunately, the video was destroyed nonetheless.

{¶16} Accordingly, we determine Wilson has not shown that the trial court erred in denying the first motion to dismiss.

**Sergeant Ellis's Video**

{¶17} Wilson did not learn that Sergeant Ellis had video from his body camera that was not provided until the first hearing on Wilson's first motion to dismiss. There is nothing in the record that suggests that Wilson asked that this particular video be preserved until after it was automatically deleted. *See Nastick*, 2017-Ohio-5626, at ¶ 11. Thus, we conclude that Wilson bore the initial burden to prove that the evidence was materially exculpatory. *Id.*

{¶18} The trial court considered the transcript from the first hearing, as well as evidence presented at the second hearing, in ruling on the second motion to dismiss. At the first hearing, Sergeant Ellis testified that his body camera was activated the entire time he was on the scene of the call about the prowler. However, he also indicated the video would not have captured when Wilson's vehicle passed because Sergeant Ellis was facing into the cornfield, away from the road. Sergeant Ellis nonetheless testified that he heard a vehicle coming and began to watch the edge of the road. He observed the vehicle traveling at a high rate of speed, which he estimated was 70 miles per hour. Sergeant Ellis testified that the vehicle then honked its horn and swerved toward him, traveling westbound in the eastbound lane. Sergeant Ellis averred that he had to jump the ditch into the cornfield to avoid being hit. Sergeant Ellis then got into his marked cruiser and proceeded to follow the vehicle driven by Wilson. Sergeant Ellis testified to witnessing four traffic violations in his pursuit of Wilson: speeding, leaving the lane of travel, and two instances of failing to use a turn signal, which both happened while Sergeant Ellis was in pursuit of the vehicle.

{¶19} At the second hearing, Sergeant Ellis testified that the video from his body camera was labeled under the case number for the prowler investigation, which was labeled as a general case report. Because of that, that video was also deleted automatically. However, Sergeant Ellis

was not aware of how long the video was kept in the system until it was deleted. Sergeant Ellis believed that he had labeled the video properly under the circumstances. He explained that, after he received the preservation order, he preserved all of the videos associated with Wilson's case number. Sergeant Ellis asserted that he did not purposefully leave the video to be deleted and did not do anything malicious to try to hide the video.

{¶20} Sergeant Ellis clarified his testimony from the first hearing and explained that he was able to observe Wilson's vehicle by turning his head and looking over his shoulder. He maintained that his body was still facing the cornfield and so the vehicle would not have been recorded on the body camera video. Sergeant Ellis also explained that prior to getting into his cruiser to pursue Wilson's vehicle, he turned off the body camera.

{¶21} In addition, Wilson also testified at the hearing. Wilson denied committing any traffic violations. Upon seeing police lights, Wilson maintained that he sounded his horn as a safety precaution; he maintained that the nearby residence had cattle and he was concerned that perhaps some had gotten loose. Wilson denied driving on the wrong side of the road. However, Wilson also admitted to drinking three 16-ounce beers during the hour before he was stopped by police. He also acknowledged that he was intoxicated that evening, but asserted that it was "not until [he] got home and [he] did start to feel the effects as [he] got home." Wilson stated that he "felt fine to drive home and as [he] got home [he] progressively got worse." Wilson believed there was no reason for Sergeant Ellis to stop Wilson's vehicle.

{¶22} We conclude that Wilson failed to demonstrate the video contained materially exculpatory evidence. *See Nastick*, 2017-Ohio-5626, at ¶ 11. Here, even assuming the video did record Wilson's vehicle, the missing evidence would not have been used to acquit Wilson of the charge itself, and, instead, would have been used only with regard to the validity of the stop that

led to Wilson's arrest. *See Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, at ¶ 13. Thus, at best, the evidence could only have been potentially useful. *See id.* Further, Wilson has not demonstrated that the destruction of the video was done in bad faith. *See id.* at ¶ 9. While the deletion of the video was unfortunate and should not have occurred, Wilson did not show that Sergeant Ellis acted with an ulterior motive or ill will. *See Nastick* at ¶ 19. Accordingly, Wilson has not demonstrated that the trial court erred in denying his second motion to dismiss.

**{¶23}** Wilson's assignment of error is overruled.

III.

**{¶24}** Wilson's assignment of error is overruled. The judgment of the Wayne County Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wayne County Municipal Court, County of Wayne, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

TEODOSIO, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

NORMAN R. "BING" MILLER, Attorney at Law, for Appellant.

DANIEL R. LUTZ, Prosecuting Attorney, and ANDREA D. UHLER, Assistant Prosecuting Attorney, for Appellee.