[Cite as *Toledo v. Wyse*, 2022-Ohio-1979.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY


State of Ohio/City of Toledo            Court of Appeals No. L-21-1126

      Appellant                        Trial Court No. CRB-20-03413

v.

Malachi Wyse                      **DECISION AND JUDGMENT**

      Appellee                         Decided: June 10, 2022

* * * * *

David Toska, City of Toledo Chief Prosecuting Attorney, and
Christopher D. Lawrence, Assistant Prosecuting Attorney, for appellant.

Michael H. Stahl, for appellee.

* * * * *

**DUHART, J.**

{¶ 1} Appellant, the city of Toledo ("the City"), appeals from a judgment entered by the Toledo Municipal Court granting a motion to dismiss filed by appellee, Malachi Wyse. For the reasons that follow, we reverse the judgment of the trial court.

## Statement of the Case

{¶ 2} On April 6, 2020, Wyse was charged under R.C. 3701.352 for violating a "stay at home" order that had been issued by the Ohio Health Department. On June 1, 2020, Wyse, through counsel, filed a motion for discovery seeking, inter alia, "[a] written list of the names and addresses of all witnesses that the City intends to call in its case in chief, or reasonably anticipates calling in rebuttal or surrebuttal." On July 2, 2020, the City responded, stating that it intended to call arresting Officer Alexander J. Simpson as a witness. On July 10, 2020, Wyse filed a motion for supplemental discovery, stating that "based on the April 6, 2020 police report * * * which states that Officer Alexander Simpson's BWC was activated during the encounter, the Defense would request any and all video recording from Officer Simpson's BWC as well as any and all BWC recordings from other police officers that recorded video of the alleged incident as well as any and all other evidence collected in this case but not yet presented to the Defendant."

{¶ 3} On July 14, 2020, the City filed a supplemental response to Wyse's request for discovery, wherein it again named Officer Simpson as the sole witness that the City intended to call as a witness. This time, however, the City indicated that, in addition to the discovery packet, body camera evidence had been provided. On July 16, 2020, Wyse filed a motion for preservation and production of exculpatory evidence, in which he requested an order directing the prosecution to preserve any and all evidence related to his case, including "a bag of snacks" that was allegedly confiscated by the Toledo police.

2.

According to Wyse, both the body-cam recordings and the confiscated food items would demonstrate that Wyse had gone grocery shopping and, thus, had been performing an essential activity, which was not in violation of the "stay at home" order, at the time of his arrest. Also on July 16, 2020, Wyse filed a motion for supplemental discovery requesting "*all* body-cam video recordings from the alleged incident." In this motion, he noted that the body-cam footage from Officer Simpson merely recorded events that occurred following Wyse's arrest, and not "the critical events leading up to his arrest." In addition, he requested "the specific gloves and mask worn by Mr. Wyse at the time of his arrest as well as the grocery bag and contents therein (including but not limited to a bottle of tea and packaged snacks) that he was carrying at the time of his arrest" and any "store receipts that were in the bag with the food items." The City failed to respond to the July 16, 2020 motion for supplemental discovery. On October 16, 2020, Wyse filed a motion to compel the requested discovery. Finally, on April 1, 2021, Wyse filed a motion to dismiss, arguing that his due process rights had been violated. Several hearings took place in connection with the outstanding motions. During a hearing held on October 21, 2020, the City prosecutor stated that the state had "made requests and put forth [to the defense] all body cam that was available that day." He further stated that "there is no other [body camera] evidence that we are in possession of to give." During a hearing held on February 25, 2021, the City prosecutor stated, "At this point the information that I have is that Officer Simpson is the only person with a functioning body

3.

camera that day." The trial court ultimately granted the motion to dismiss in a judgment entry filed on June 22, 2021.

{¶ 4} In the judgment entry, the trial court relevantly concluded that Wyse's property, including "groceries, mask, and gloves," had been confiscated by police. In addition, the court stated:

In the case at hand, the court finds that the [video] evidence that was either lost, destroyed, or unproduced by the state could certainly be exculpatory. * * * The defendant's personal property seized and lost on the night in question likewise would be exculpatory in proving that he was engaged in the lawful activity of returning from the grocery store at the time of the arrest.

The court further finds that both the video evidence and the personal property evidence are unique and not obtainable by other means. As such, the court finds that defendant's Due Process rights were violated when the state destroyed, lost, or failed to produce the evidence that the defendant properly, repeatedly, and specifically requested.

* * * In the case at hand, the Court does not find that the individual officers acted in bad faith. However, the officers in either failing to activate their body worn cameras, or in failing to preserve the recorded encounter,

or in failing to locate the preserved video evidence stored in the Cloud is troubling to the Court.

Add to it, the failure to secure and inventory the defendant's personal property upon his arrest and there is a complete failure of the officers in following the mandated procedures from their own department. This leaves the defendant without any objective evidence of the incident in question. When a police department embraces the video technology in question, and adopts specific policies to its use and retention, it assumes the responsibility to follow its own mandates. The responsibility to preserve and produce evidence is of paramount importance to justice being served for both sides.

Given the totality of the circumstances, the Court finds that the appropriate sanction is the granting the defendant's motion to dismiss. Anything less would be unjust.

(Emphasis added.)

{¶ 5} On June 24, 2021, the City timely filed an appeal from the judgment.

## Statement of the Facts

{¶ 6} On April 6, 2020, Officer Alexander Simpson arrested Wyse for violating the Ohio Health Department "stay at home" order. Officer Anthony Vines, who was present on the scene, testified that there was a "mass gathering of people," "quite a big

crowd," with "multiple officers" present. The arresting officer, Officer Alexander Simpson, testified that there were between three and five officers within 25 feet of Wyse at the time of his arrest. Officer Vines testified that he did not witness the arrest. The other officers were not named in the police report and neither Officer Simpson nor Officer Vines could testify as to their identities.

{¶ 7} Officer Simpson testified that each officer on the scene should have been equipped with a body camera, excluding specialty units and sergeants, and that, pursuant to Toledo Police Department policy, any interaction between an officer and a civilian should be recorded. Sergeant James Cornell, whose unit was in charge of all technical components of the Toledo Police Department, testified that any video footage that was created should have been saved in "the cloud."

{¶ 8} Officer Simpson testified that on the day in question, he had attempted to activate his body camera device during the incident when he began his interaction with Wyse, but when he was placing Wyse under arrest, he looked down and noticed that his camera was not functioning. At that point, he turned the camera on. Thus, the camera only picked up activity that occurred after the arrest. Officer Simpson denied deleting any portion of the recording.

{¶ 9} Regarding the procedure the Toledo Police Department employs for handling physical property that is obtained from a citizen, Officer Vines testified that

6.

where property is not booked as evidence or contraband, it is brought to the Lucas County jail and booked as the personal property of the defendant.

{¶ 10} Wyse alleges that Toledo police failed to inventory and preserve his groceries, mask, receipt, and gloves. It is undisputed that there was no inventory performed or property receipt given to Wyse. The City alleges that this is because the items either did not exist or they were never seized and booked as evidence.

## Assignments of Error

{¶ 11} Appellant asserts the following assignments of error on appeal:

I. The trial court acted contrary to law.

II. The trial court erred in finding that evidence was not available by other means.

## Analysis

{¶ 12} Appellate review of a trial court's decision on a pre-trial motion to dismiss is de novo. *State v. Nastick*, 2017-Ohio-5626, 94 N.E.3d 139 (2017), ¶ 8 (9th Dist.); see also *State v. Benton*, 136 Ohio App.3d 801, 805, 737 N.E.2d 1046 (6th Dist. 2000). "The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects an accused from being convicted of a crime when the [s]tate either fails to preserve materially exculpatory evidence or destroys, in bad faith, potentially useful evidence." *Nastick* at ¶ 8, citing *California v. Trombetta*, 467 U.S. 479, 489, 104 S.Ct 2528, 81 L.Ed.2d 413 (1984); *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333,

7.

102 L.Ed.2d 281 (1988). Thus, "the suppression of exculpatory evidence that is material to guilt or punishment violates due process without respect to whether the state acted in bad faith." *State v. Jalowiec*, 2015-Ohio-5042, 52 N.E.3d 244, ¶ 48 (9th Dist.). However, "[w]hen the [s]tate fails to preserve evidence that is merely 'potentially useful,' a defendant must demonstrate that the state acted in bad faith." *Id.*, quoting *Youngblood* at 58. The term "bad faith" generally implies something more than bad judgment or negligence[;] [i]t imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud." (Quotations omitted.) *State v. Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234, ¶ 30 (6th Dist.).

{¶ 13} "Evidence is materially exculpatory only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different[;] a "reasonable probability" is a probability sufficient to undermine confidence in the outcome." (Quotations omitted.) *Toledo v. Zapata*, 6th Dist. Lucas No. L-14-1181, 2015-Ohio-3946, ¶ 6, quoting *State v. Johnston*, 39 Ohio St.3d 48, 61, 529 N.E.2d 898 (1988). (Additional citation omitted.) "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." (Quotations omitted.) *Id.* at ¶ 9, citing *State v. Jackson*, 57 Ohio St.3d 29, 33, 565 N.E.2d

8.

549 (1991), quoting *United States v. Agurs*, 427 U.S. 97, 109, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

{¶ 14} We consider first the issue of the body camera evidence in this case. As indicated above, the only body camera evidence that was turned over to the defense consisted of a video recording by arresting officer Simpson, which was taken after Wyse's arrest, when Simpson had finally turned his camera on.

{¶ 15} The law is clear that "[t]he Due Process Clause of the United States Constitution does not require the state to employ particular investigative techniques to the defendant's liking." *State v. Wooten*, 4th Dist. Athens No. 01CA31, 2002 WL 488122 *3 (Mar. 25, 2002), citing *Youngblood* at 59. Several Ohio courts have interpreted this language to mean that a failure of the police to create an audio or video recording, even if the recording could be potentially useful to the defense, does not violate a defendant's due-process rights. *See State v. Hamilton*, 1st Dist. Hamilton Nos. C-200041, C-200042, 2021-Ohio-1421, ¶ 21 (finding that police officer was under no duty to record field-sobriety tests and that his failure to record did not violate the defendant's due-process rights); *Wooten* at *3 (holding that *Youngblood* is inapplicable to a police officer's failure to record field-sobriety tests); *City of Cleveland v. Brown*, 8th Dist. Cuyahoga No. 80112, 2002-Ohio-2139, ¶ 11 (finding that a constitutional violation can only be established if "*existing evidence* was not preserved in circumstances amounting to prosecutorial 'bad

faith,'" and, further, that "there is no constitutionally imposed duty to obtain evidence by employing any specific technological means").

{¶ 16} We are aware that some Ohio appellate districts appear to have incorporated a bad-faith exception into the general rule that officers have no duty to record field-sobriety tests. *See, e.g., State v. Boles,* 2020-Ohio-4485, 158 N.E.3d 1013, ¶ 29 (2d Dist.) ("In the absence of bad faith, the failure of a police officer to cause a videotape or audiotape record to be made of that officer's encounter with a suspect does not violate the suspect's constitutional right to due process of law under the Fourteenth Amendment to the United States Constitution."); *State v. Smith*, 5th Dist. Licking No. 09-CA-42, 2010-Ohio-1232, ¶ 48 (finding insufficient showing of bad faith in trooper's failure to record encounter with defendant to find that defendant's due process rights were violated); *State v. Pace*, 3d Dist. Hancock No. 5-12-30, 2013-Ohio-2143, ¶ 21 (finding no evidence that trooper's decision to conduct field sobriety tests out of the range of the dashboard camera was motivated by bad faith). To the extent that these courts have expanded the holding of *Youngblood* to include a bad-faith failure to *create* evidence, we decline to follow those holdings.

{¶ 17} Because Officer Simpson had no constitutionally-mandated duty to record his encounter with Wyse, his failure to create such evidence did not result in any violation of Wyse's due process rights.

10.

**{¶ 18}** The same reasoning applies to any other on-scene officer's failure to create video in this case. Absent any constitutionally-imposed duty to record, there can be no due process violation.

**{¶ 19}** To the extent that video recordings by non-arresting officers' who were also present at the scene might, in fact, exist -- or might once have existed -- we find that such evidence would necessarily be characterized as "potentially" useful, rather than materially exculpatory. As indicated above, Officer Simpson testified that there were approximately three to five other officers who were "within 25 feet" of Wyse at the time of his arrest. Officer Vines, who was one of the officers on the scene, testified that he did not witness any arrests at all that night. Although there is a possibility that video footage taken by one of the other nearby officers might have helped the defense, or might have affected the outcome of this trial, such is insufficient to establish "materiality" in the constitutional sense. *See Zapata*, 6th Dist. Lucas No. L-14-1181, 2015-Ohio-3946, at ¶ 9. Because the evidence would be merely "potentially useful," Wyse would have to demonstrate that the officer's actions amounted to bad faith in order to show that his due process rights were violated. *See Youngblood*, at 57-58; *Durnwald*, 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234, at ¶ 30. As indicated above, the trial court found no bad faith on the part of the individual officers in this case. Upon review of the record, we cannot say that the trial court erred in this determination. Accordingly, Wyse

11.

cannot show that any failure on the part of the police to preserve potentially useful video evidence amounted to a denial of due process of law.

{¶ 20} We are sympathetic to Wyse's frustration that police did not use their video equipment to record the encounter that led to his arrest, especially when Toledo Police Department policy clearly dictated that they should have done so. As stated by the court in *Wooten*:

> We believe that the officer's failure to use the audio and video equipment could properly be considered by the trier of fact, whether during a motion to suppress evidence hearing to determine the existence of probable cause to arrest or at a trial on the merits, in the exercise of its duty to assess witness credibility. In other words, a trier of fact could choose to discount an officer's testimony in view of the failure to collect audio and video evidence.

{¶ 21} In an effort to avoid reversal of the trial court's decision, Wyse argues that argues that "the seizure and failure to preserve the exculpatory physical evidence is an independent ground for dismissal." In response, the City argues that "[t]he state has consistently denied seizing any physical property from defendant." The City further points out that no testimony from any officer and no testimony from Wyse concerning physical evidence exists. Officer Vines testified that if property were not booked as evidence or contraband, it would be brought to the Lucas County jail and booked as the

12.

personal property of the defendant. It is undisputed that there was no inventory performed or property receipt given to Wyse. Wyse alleges that this is because the Toledo Police Department failed to inventory and preserve his groceries, mask, receipt, and gloves. The City, on the other hand, asserts that this is because these items either did not exist or they were never seized and booked as evidence.

{¶ 22} In its judgment entry, the trial court expressly and unequivocally found that Wyse's property was "seized and lost" by police. Thus, merely on the basis of an allegation by Wyse, unsupported by any evidence in the record, the trial court concluded not only that the items did exist, but also that they were seized and lost or destroyed by Toledo Police. Because there is no evidence to support this finding, we conclude that the finding is an abuse of discretion.

{¶ 23} Finally, we consider Wyse's claim that dismissal was appropriate in this case because the City failed to respond to his discovery request for the names of the additional officers who were on the scene at the time of his arrest. As indicated above, on June 1, 2020, Wyse filed a motion for discovery wherein he sought "[a] written list of the names and addresses of all witnesses that the City intends to call in its case in chief, or reasonably anticipates calling in rebuttal or surrebuttal." The City responded by providing the name of Officer Simpson and by providing footage from Officer Simpson's body camera video. On July 16, 2020, Wyse filed a motion for supplemental discovery requesting "*all* body-cam video recordings from the alleged incident." Although the City

13.

failed to file a written response to the motion, at a hearing held on February 25, 2021, the prosecutor, in response to defense counsel's oral request for the identities of the other officers who were on the scene on the day in question, stated the following:

> As a motion for supplemental discovery has already been put forth, that investigation has already tooken [sic] place. * * * At this point, if a motion is put forth for supplemental discovery, it would be the same exact materials that [defense counsel] has already gotten. There is nothing extra.

{¶ 24} Regarding Wyse's request for all body camera recordings that were made at the time of the incident, the prosecutor provided:

> At this point the information that I have is that Officer Simpson is the only person with a functioning body camera that day.

{¶ 25} "The granting or overruling of discovery motions in a criminal case rests within the sound discretion of the trial court." *State v. Shoop*, 87 Ohio App.3d 462, 469, 622 N.E.2d 665 (3d Dist.1993). Abuse of discretion connotes more than an error of law or judgment; rather, it implies that the trial court's decision was arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 26} "The purpose of the discovery rules is to prevent surprise and the secreting of evidence favorable to one party." *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 19. "A trial court must inquire into the circumstances

14.

surrounding a discovery rule violation and, when deciding whether to impose a sanction, must imposed the lease severe sanction that is consistent with the purpose of the rules of discovery." *City of Lakewood v. Papadelis*, 32 Ohio St.3d 1, 511 N.E.2d 1138 (1987), paragraph two of the syllabus. This court has recognized that "a trial court may not dismiss a case against a party who has failed to respond to discovery requests unless the record reflects willfulness or bad faith on the part of the party who has failed to respond." *Toledo v. Drake*, 6th Dist. Lucas No. L-15-1152, 2015-Ohio-5497, ¶ 9, citing *State v. Warfield*, 8th Dist. Cuyahoga No. 86055, 2006-Ohio-935. (Additional citations omitted.)

{¶ 27} Upon our careful review of the record, we find no indication that the City's failure to abide by Wyse's discovery requests was done willfully or was motivated by bad faith. The prosecutor did comply with Crim.R. 16(I), in that he disclosed the identity of the witness he intended to call at trial. Although Wyse's latest discovery request sought the names of all officers who were on the scene on the day in question, irrespective of whether the City intended to call such persons as witnesses at trial, Crim.R. 16(I) has no such requirement. We find that under the circumstances of this case, where there is no evidence of bad faith and where the prosecutor did comply with the requirement set forth in Crim.R. 16(I), the sanction of dismissal was an abuse of discretion. *See Drake* at ¶ 10 (Where appellee's discovery demand sought the names of witnesses irrespective of whether the City intended to call them at trial, and where the prosecutor did, in fact,

comply with Crim.R. 16(I), dismissal of the case with prejudice denoted an abuse of discretion.).

{¶ 28} The City's first assignment of error is found well-taken. As our resolution of the first assignment of error provides all of the relief requested in the appeal, the City's second assignment of error is dismissed as moot.

{¶ 29} The judgment of the Toledo Municipal Court is reversed. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.    _____
              JUDGE
Thomas J. Osowik, J.

Myron C. Duhart, P.J.     _____
CONCUR.           JUDGE

              _____
              JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.