OPINION
{¶ 1} Defendant-appellants, Paul McDade and Robert McMurray,[1] separately appeal their convictions in the Mason Municipal Court for driving while under the influence of alcohol ("DUI") in violation of R.C. 4511.19(A)(1).[2]
Because appellants present identical issues and arguments on appeal, their cases have been consolidated.
 {¶ 2} In the very early hours of March 8, 2003, Sergeant Erik Tonstad of the Warren County Sheriff's Office pulled in the parking lot of Landen Square in Deerfield Township to exchange paperwork with another deputy sheriff. As he was driving on the parking lot, Sgt. Tonstad witnessed Peter Armstrong fall out the back door of a moving Cadillac on the parking lot. Sgt. Tonstad immediately stopped his cruiser to check on Armstrong. Sgt. Tonstad testified that he did not turn on his cruiser's overhead lights when he exited to attend to Armstrong because it was not a traffic stop.
 {¶ 3} As Sgt. Tonstad went to help Armstrong, two events transpired nearly simultaneously. First, according to Sgt. Tonstad, McDade stopped and exited the driver's side door of the Cadillac to check on Armstrong. Second, McMurray backed a separate vehicle out of a parking space and nearly hit Sgt. Tonstad's cruiser. Sgt. Tonstad yelled at McMurray to stop his vehicle. McMurray complied with the order and pulled the vehicle back into the parking space.
 {¶ 4} As events further progressed, Deputy John Fain, Deputy David Spattafore, and Deputy M. Wyatt of the Warren County Sheriff's Office arrived on the scene to assist Sgt. Tonstad. Deputy Fain processed McDade. The officer testified that he found McDade sitting in the passenger's side seat of the Cadillac. Sitting in the driver's seat of the Cadillac was McDade's wife. Deputy Fain testified that McDade had glassy bloodshot eyes, slurred repetitive speech, an intense odor of alcohol, and was swaying once out of the vehicle. Due to McDade's belligerent behavior, no field sobriety tests were performed. Deputy Fain subsequently arrested McDade.
 {¶ 5} Similarly, Deputy Spattafore attended to McMurray. The officer testified that McMurray appeared to be under the influence of alcohol. McMurray had an extremely strong odor of alcohol, glassy bloodshot eyes, slurred speech, and could barely stand up. Deputy Spattafore asked McMurray to perform a series of field sobriety tests. McMurray declined to take the tests because he was "already drunk" and there was no point in taking the tests. McMurray was subsequently arrested.
 {¶ 6} Appellants were taken to the Warren County Jail where they agreed to submit to a breathalyzer test. McDade tested .195 grams of alcohol per two hundred ten liters of breath. McMurray's test results were .192. Appellants were then each charged with DUI in violation of R.C. 4511.19(A)(1).
 {¶ 7} On March 11, 2003, appellants' attorney filed a motion to suppress evidence as well as a demand for discovery of all the videotapes from the four deputies' cruisers involved with the events of March 8, 2003. At a suppression hearing held on March 28, 2003, Sgt. Tonstad testified that both appellants were driving their vehicles on the night of their arrests. Sgt. Tonstad testified that after the officers responded to the scene, he "looked over at the Cadillac and now [McDade's wife] was sitting behind the wheel." Sgt. Tonstad also testified he did not turn his overhead lights on until a tow truck came to the scene because it was not a traffic stop. Although turning on the lights would normally have activated the video camera in his cruiser, Sgt. Tonstad testified he manually turned off the camera as there was no need to tape the towing. As a result, nothing was taped. Sgt. Tonstad, as well as other deputies, further testified that none of the cruisers present at the scene had their overhead lights on. As a result, the cameras in the cruisers were not activated. This statement was later contradicted by a videotape from one of the cruisers showing that three of the four cruisers at the scene had in fact their overhead lights on.
 {¶ 8} The suppression hearing was continued to April 16, 2003 to allow the state to provide defense counsel with the videotapes of the cruisers present at the scene. On April 16, 2003, videotapes from the cruisers of Sgt. Tonstad and Deputies Spattafore and Wyatt were viewed in court. As just mentioned, one of the videotapes showed that three of the cruisers at the scene had their overhead lights on. The videotape from Sgt. Tonstad's cruiser was blank. The videotape from Deputy Fain's cruiser was not viewed in court but was later sent to defense counsel. The trial court subsequently ordered the state to "provide to the defense copies of all the tapes from all the cruisers." The trial court also prohibited the state from presenting any videotape evidence at trial as a sanction for improperly handing over videotapes to defense counsel. Appellants, however, were allowed to use any portion of the videotapes at trial.
 {¶ 9} Appellants' cases proceeded to a joint bench trial between May 29 and August 12, 2003. Sgt. Tonstad testified, again, that he observed both appellants drive their respective vehicles. Sgt. Tonstad further testified that after everything calmed down, McDade's wife was now sitting in the driver's seat of the Cadillac. Sgt. Tonstad also testified that he turned on his overhead lights only for the tow truck and that he immediately manually turned off the camera. Sgt. Tonstad testified he did not turn on his overhead lights until much later because it was not a traffic stop. A tape from his cruiser was viewed during trial. It was blank. Deputy Fain explained that when the overhead lights of a cruiser are turned on, it automatically activates the cruiser's camera. However, an officer can manually turn off the camera if there is no need to record (such as when an officer directs traffic).
 {¶ 10} Appellants denied driving their cars. McDade testified that he was not operating the Cadillac at the time Armstrong fell out on the parking lot. Rather, according to both McDade and Armstrong, McDade's wife was driving the Cadillac. Likewise, McMurray testified that Sgt. Tonstad did not observe him operating his vehicle. McMurray testified that he never started or moved his car on the night of the arrest. McMurray stated he was in his car only to grab a cellular phone and coat. Appellants also testified that the overhead lights of Sgt. Tonstad's cruiser were on. McDade further testified that in fact, three of the four cruisers present at the scene had their overhead lights on. On September 2, 2003, the trial court found both appellants guilty of DUI in violation of R.C. 4511.19(A)(1). These appeals follow.
 {¶ 11} In their sole assignment of error, appellants each argue that their DUI conviction was not supported by sufficient evidence. Appellants contend that the state failed to show beyond a reasonable doubt that they were driving their vehicles on the night of their arrests while under the influence of alcohol.
 {¶ 12} The legal concept of sufficiency of the evidence refers to whether the conviction can be supported as a matter of law. See State v. Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52. When reviewing the sufficiency of the evidence to support a criminal conviction, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Smith,80 Ohio St.3d 89, 113, 1997-Ohio-355, quoting State v. Jenks (1991),61 Ohio St.3d 259. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Smith at 113.
 {¶ 13} Appellants argue that their due process rights were violated by the state's destruction of or failure to preserve the videotapes from the cruisers present at the scene, in particular the potentially exculpatory videotape from Sgt. Tonstad's cruiser. Appellants contend that although three cruisers had their overhead lights on, including Sgt. Tonstad's cruiser, "there were essentially no tapes available[.]" Appellants surmise that "[o]ne can only conclude that the tapes did exist and that for some reason they were destroyed."
 {¶ 14} The state's failure to preserve materially exculpatory evidence or its destruction in bad faith of potentially useful evidence violates a criminal defendant's due process rights.State v. Benson, 152 Ohio App.3d 495, 2003-Ohio-1944, ¶ 10;State v. Benton (2000), 136 Ohio App.3d 801, 805. Where the defendant requests evidence and the state fails to respond in good faith to the defendant's request, the burden shifts to the state to show that the evidence was not exculpatory. SeeColumbus v. Forest (1987), 36 Ohio App.3d 169. Likewise, the same burden shifts to the state where the defendant moves to have the evidence preserved and the state destroys the evidence.Benson at ¶ 10.
 {¶ 15} We note at the outset that although appellants contend that the state allegedly failed to preserve or destroyed the videotapes from at least three of the cruisers present at the scene, we will only address the state's alleged destruction or failure to preserve Sgt. Tonstad's videotape. The sole factual issue in this case was whether appellants were driving their vehicles. It is undisputed that by the time the officers responded to the scene to assist Sgt. Tonstad, appellants were no longer allegedly driving their vehicles. Thus, the videotapes from the responding officers would not and could not have shown whether appellants were driving their vehicles that night.
 {¶ 16} Upon reviewing the record in a light most favorable to the prosecution, we find that sufficient evidence supports appellants' DUI convictions. The Benton and Benson cases involved destroyed videotapes. There is no evidence in this case that the videotape from Sgt. Tonstad's cruiser was destroyed or that the state failed to preserve it. In fact, a videotape from Sgt. Tonstad's cruiser was provided by the state, albeit not eagerly, and viewed during the suppression hearing and at trial. The tape was blank. There is no evidence that the tape was blank because it had been erased and/or re-used. Sgt. Tonstad consistently testified that the tape was blank because he was not making a traffic stop; rather, he was in the process of assisting Armstrong, the potentially injured passenger. Sgt. Tonstad also consistently testified that although he eventually turned on his overhead lights, he immediately and manually turned off the camera. Therefore, a recording of the events between Sgt. Tonstad and appellants did not exist.
 {¶ 17} Rather than a case of destruction of evidence, this case is more akin to a case of failing to create evidence. InState v. Wooten, Athens App. No. 01CA31, 2002-Ohio-1466, 2002 WL 488122, the Fourth Appellate District held that the state "has no constitutional duty to ensure that DUI defendants' traffic stops and sobriety tests are recorded on video or audio tapes." Id. at *4. The appellate court found that a police officer's failure to make a video and audio tape of a defendant's DUI traffic stop and field sobriety tests did not violate the defendant's due process rights warranting suppression of the evidence or dismissal of the charge. Id. See, also, Athens v.Gilliland, Athens App. No. 02CA4, 2002-Ohio-4347. By not turning on his overhead lights and/or by manually turning off the camera, Sgt. Tonstad clearly failed to create or collect evidence, as did the police officer in Wooten.
 {¶ 18} Further, the state presented evidence at trial that both appellants operated vehicles while intoxicated on the night of their arrests. It is undisputed that on the night of their arrests, both appellants appeared intoxicated and that each had a breath alcohol content level over .19, clearly over Ohio's legal limit. Sgt. Tonstad testified that McDade was driving a vehicle at the time Armstrong spilled out onto the parking lot. Sgt. Tonstad also saw McMurray move his vehicle out of a parking space and nearly hit his cruiser. Although Sgt. Tonstad's testimony contradicted appellants' testimony, the trial court, while well aware of the issues surrounding the videotapes, chose to believe Sgt. Tonstad and disbelieve appellants.
 {¶ 19} Viewing this evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could find that the elements of the offense were proven beyond a reasonable doubt. Appellants' DUI convictions are therefore supported by sufficient evidence. Appellants' respective assignments of error are overruled.
Judgment affirmed.
Powell and Valen, JJ., concur.
[1] When referred together, McDade and McMurray will be referred to as appellants. However, when referred to separately, they will be referred to by their last names.
[2] R.C. 4511.19(A)(1) provides that "[n]o person shall operate any vehicle * * * within this state, if, at the time of operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."