**[Cite as *State v. Boles*, 2020-Ohio-4485.]**

# IN THE COURT OF APPEALS OF OHIO
# SECOND APPELLATE DISTRICT
# MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28704 |
| | : | |
| v. | : | Trial Court Case No. 2019-TRC-815 |
| | : | |
| CHASE A. BOLES | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellee | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of September, 2020.

. . . . . . . . . . .

NOLAN C. THOMAS, Atty. Reg. No. 0078255, City of Kettering Prosecutor's Office, 2325 Wilmington Pike, Kettering, Ohio 45420
    Attorney for Plaintiff-Appellant

ANGELINA N. JACKSON, Atty. Reg. No. 0077937, Montgomery County Public Defender's Office, 117 South Main Street, Suite 400, Dayton, Ohio 45422
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} The State of Ohio appeals from a decision of the Kettering Municipal Court that granted Chase A. Boles's motion to suppress evidence that led to his arrest on charges of operating a vehicle while under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a). The judgment of the trial court will be reversed, and this matter will be remanded for further proceedings.

**Factual and Procedural Background**

{¶ 2} Sometime shortly after 10 p.m. on February 12, 2019, the SUV that Boles was attempting to pull forward through an open parking space struck an unoccupied vehicle in the parking lot at Bargo's Bar and Grill ("Bargo's") in Washington Township. At that time, Deputies Brandon Baker and Michael Beach of the Montgomery County Sheriff's Office happened to be arriving at Bargo's, in separate cars, in response to a call about a different incident. Baker witnessed and Beach heard Boles's collision.

{¶ 3} While Dep. Baker radioed in to report a crash involving property damage, Dep. Beach exited his vehicle and approached Boles's SUV. According to Dep. Beach, he "immediately smell[ed] a strong odor of alcoholic beverage on [Boles's] person." (Tr. p. 17.) In addition, Dep. Beach said that Boles's "speech was a little slurred, his eyes were bloodshot, glassy, red." (*Id.*) Boles initially told Dep. Beach that he (Boles) had consumed two drinks at Bargo's; after further questioning, Boles said he had drunk a total of four alcoholic beverages at two different locations that night. Based on his training and observations, Dep. Beach suspected that Boles was under the influence of alcohol.

{¶ 4} Dep. Beach acquired Boles's identification and car keys; he requested the keys to prevent Boles from leaving the scene before the person driving the unoccupied

vehicle had been identified. Dep. Beach then radioed Deputy Bradley Fizer of the Montgomery County Sheriff's Office for his assistance in administering field sobriety tests to Boles. While waiting for Dep. Fizer to arrive, Dep. Beach proceeded inside Bargo's with Boles's driver's license and asked the bartender if she had served Boles any alcohol. The bartender responded that she believed she had served Boles two "tall ones." (Tr. p. 20.) When Dep. Fizer arrived soon thereafter, Dep. Beach handed him Boles's license, briefed him (Fizer) about what Beach had observed, and "let [Dep.] Fizer take over." (*Id.*)

{¶ 5} Dep. Fizer testified that at the time of this incident, his "sole duty" with the Sheriff's Office for about six years had been "to handle impaired drivers." (Tr. p. 29.) He outlined his basic and advanced training in that area, based on NHTSA[1] standards, and he noted that he also instructs other police officers to perform field sobriety tests in accordance with NHTSA standards. He estimated he had made 600 to 700 OVI arrests during his career. Dep. Fizer stated that other deputies frequently call him to assist in OVI investigations due to his extensive experience. On the night of Boles's collision, Dep. Fizer already was en route to Bargo's when Dep. Beach radioed him, and he arrived within "just a couple minutes." (Tr. p. 31.)

{¶ 6} Dep. Fizer found Boles still in the driver's seat of his SUV. Boles said he had "popped [his] clutch" while attempting to leave Bargo's, and struck another car. (Tr. p. 33.) Dep. Fizer observed minor damage to the front driver's side fenders of both vehicles. He said he "could smell a strong odor of alcoholic beverage on [Boles's] breath" and noticed that Boles had slurred speech and glassy eyes. Asked how much he had drunk that night,

---

[1] An acronym for "National Highway Traffic Safety Administration" standards. (*See* 3/22/19 Motion to Suppress, p. 2).

Boles told Dep. Fizer that he drank two Budweisers at Bargo's and two earlier at another nearby bar. Dep. Fizer asked Boles to exit his vehicle to perform field sobriety tests, and Boles agreed.

{¶ 7} Dep. Fizer described Boles as "having trouble walking straight" toward the deputy's cruiser; 'he was kind of stumbling and walking, you know, kind of staggered." (Tr. p. 34.) After determining that Boles did not wear glasses or contact lenses, did not take any medications, and did not have any physical impairments, Dep. Fizer administered a "horizontal gaze nystagmus" ("HGN") test and obtained results indicative of "a high level of impairment." (Tr. p. 35-39.) He also administered a "vertical nystagmus test," with similar results. Next, Dep. Fizer administered a "walk and turn" test, as to which he reported Boles "lost balance during instructions, he stopped or paused during the test, he didn't touch heel to toe, he stepped off the line, he raised his arms more than six inches away from his body, and he did not turn correctly," indicating impairment. (Tr. p. 42-43.) On the "one-legged stand" test, Boles reportedly "swayed while balancing, * * * raised his arms more than six inches, and * * * also put his foot down." (Tr. p. 43-44.) Again, Dep. Fizer testified that test result indicated a high probability that Boles was intoxicated.

{¶ 8} Boles refused to take a breath test, so evidence regarding his alcohol content percentage was not available. Additionally, no video of Boles's field sobriety testing was presented; Dep. Fizer testified that he mistakenly believed that his cruiser camera was recording, but learned only afterward that "my recorder was not on." (Tr. p. 55.) Dep. Fizer arrested Boles for OVI, but did not take him into custody. Boles was permitted to call someone to drive him home.

{¶ 9} After entering a not guilty plea in the Kettering Municipal Court to the OVI

charge, Boles moved through counsel to suppress the evidence against him. He argued that law enforcement officers lacked probable cause to stop, detain, and arrest him; that his field sobriety tests were not administered in substantial compliance with NHTSA standards; and that his statements were obtained in violation of his Fifth Amendment right against self-incrimination.

{¶ 10} Following a suppression hearing during which Deputies Baker, Beach, and Fizer testified as summarized above, the trial court entered a decision granting Boles's motion to suppress. That decision stated in pertinent part as follows:

> After due consideration of the evidence and testimony adduced, and the legal arguments of counsel, the Court finds that based upon the totality of the circumstances there was initially some reasonable suspicion upon which to temporarily detain [Boles] to investigate further. However, the Court also finds that based upon the testimony presented, the Court cannot conclude that there was substantial compliance with NHTSA standards in the administration of the field sobriety tests. The Court further finds that based upon its evaluation of the testimony and evidence presented, and the inconsistencies, gaps and omissions therein[,] there was not sufficient probable cause upon which to arrest [Boles] for OVI.

(1/28/20 Decision & Entry on Defendant's Motion to Suppress, p. 6.)

{¶ 11} The State of Ohio filed a timely appeal from that decision, setting forth two assignments of error:

> 1) The trial court erred in failing to find that the field sobriety tests were administered in substantial compliance with NHTSA standards and

sustaining Boles's Motion to Suppress.

2) The trial court erred in concluding that Deputy Fizer did not have probable cause to arrest Boles for OVI and granting Boles's Motion to Suppress.

## Standard of Review

{¶ 12} When ruling on a motion to suppress, " 'the trial court assumes the role of trier of facts and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). We must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Villegas*, 2d Dist. Montgomery No. 27234, 2017-Ohio-2887, ¶ 11, citing *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, we then must determine as a matter of law, without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied. *Id.*

## Assignment of Error #1 – Administration of Field Sobriety Tests

{¶ 13} The State first challenges the trial court's conclusion that the evidence presented at the suppression hearing was insufficient to demonstrate "substantial compliance with NHTSA standards in the administration of the field sobriety tests." (1/28/20 Decision & Entry on Defendant's Motion to Suppress, p. 6.) The State maintains that Dep. Fizer's uncontested testimony regarding the field sobriety tests he administered and the manner in which he administered them was sufficient to establish the admissibility of Boles's test results.

{¶ 14} With respect to the admission of field sobriety test results in an OVI prosecution, the applicable statute provides as follows:

> In any criminal prosecution * * * for a violation of division (A) or (B) of this section, * * * if a law enforcement officer has administered a field sobriety test to the operator of the vehicle involved in the violation and if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration, all of the following apply:
>
> (i) The officer may testify concerning the results of the field sobriety test so administered.
>
> (ii) The prosecution may introduce the results of the field sobriety test so administered as evidence in any proceedings in the criminal prosecution * * *.
>
> (iii) If testimony is presented or evidence is introduced under division (D)(4)(b)(i) or (ii) of this section and if the testimony or evidence is admissible under the Rules of Evidence, the court shall admit the testimony or evidence and the trier of fact shall give it whatever weight the trier of fact considers to be appropriate.

R.C. 4511.19(D)(4)(b). *See also State v. Murray*, 2020-Ohio-45, __ N.E.3d __, ¶ 19 (2d Dist.).

{¶ 15} The results of field sobriety tests generally are admissible so long as the proper foundation has been laid as to both the administering officer's training and ability to administer the tests and the actual technique he or she used to administer the tests. *State v. Boczar,* 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155, ¶ 28. Accordingly, the State's burden of proof regarding the admissibility of field sobriety test results "is not an onerous one"; " 'general testimony that all pertinent rules and regulations had been followed in conducting the defendant's test, if unchallenged, would amount to a sufficient foundation for the admission of the results.' " *State v. Murray*, 2d Dist. Greene No. 2002-CA-10, 2002-Ohio-4809, ¶ 11, quoting Painter & Looker, *Ohio Driving Under the Influence Law*, T11.19 (2001 Ed.). "For example, testimony by the officer that he or she had been trained to perform the HGN test under NHTSA standards, and that the test was performed in the manner in which the officer had been trained, would suffice for admission of the field sobriety test results, absent a challenge to some specific way the officer failed to comply with NHTSA standards." *State v. Reynolds*, 2d Dist. Greene No. 2012-CA-64, 2014-Ohio-3642, ¶ 27, citing *State v. Reed*, 2d Dist. Montgomery No. 23357, 2010-Ohio-299, ¶ 54.

{¶ 16} Boles's motion to suppress averred generally that "[t]he administration of the field sobriety tests given to [Boles] by the officer were not done in substantial compliance with the rules and regulations of the National Highway Traffic Safety Administration," but provided no specifics as to any alleged deficiencies. (3/2/19 Motion to Suppress, p. 2.) During the suppression hearing that followed, Det. Fizer testified that he was trained to administer field sobriety tests in accordance with NHTSA standards (Tr. p. 30), and he provided details as to his administration, pursuant to his training, of three

such tests – HGN, "walk and turn," and "one-legged stand" – to Boles. (*Id.*, p. 37-39, 41-42, 43-44.) He also separately confirmed that each of the field sobriety tests he asked Boles to perform was administered "per the standards of the NHTSA manual." (*Id.*, p. 44.) Det. Fizer thus laid a proper foundation for the admission of Boles's field sobriety test results.

{¶ 17} In cross-examining Det. Fizer, Boles's attorney did not question the detective's qualifications or the manner in which he administered those tests. (*See id.*, p. 46-60.) Instead, she focused on Fizer's failure to record the testing with his cruiser's camera and the fact that he did not prepare his "intoxication influence report" while administrating the field sobriety tests, but rather "within an hour or so" afterward. (*Id.*, p. 50.)

{¶ 18} Boles's appellate brief, however, advances specific challenges to Dep. Fizer's testing procedures that were not raised in his motion to suppress or through cross-examination at the suppression hearing. Those challenges consist in their entirety of the following:

> Deputy Fizer did not give any instructions to [Boles] for the HGN test.
> Deputy Fizer demonstrated the WAT (walk and turn) test after giving [Boles]
> instructions and did not confirm that [Boles] understood the instructions for
> positioning before he began the walking portion of the test. Deputy Fizer did
> not time the OLS (one-legged stand) test.

(Citations to record omitted.) (Brief of Defendant-Appellee, p. 5.)

*a. Specific challenges to testing procedures*

{¶ 19} As the trial court's decision does not elaborate on its conclusion that Det.

Fizer's adherence to NHTSA standards was not sufficiently established, the record contains no specific findings of fact to which we must defer on that issue. Because the purported testing deficiencies identified in Boles's appellate brief were not raised in his motion to suppress or through cross-examination of Det. Fizer, we conclude that such alleged deficiencies did not provide a proper basis for suppression of the field sobriety test results.[2]

{¶ 20} In the context of a motion to suppress breath test results in an OVI case, this court previously has remarked that the State's " 'burden to establish substantial compliance [with applicable testing standards] only extends to the level with which the defendant takes issue with the legality of the test.' " *State v. Conley*, 2d Dist. Greene No. 2007-CA-52, 2008-Ohio-609, ¶ 7, quoting *State v. Bissaillon,* 2d Dist. Greene No. 06-CA-130, 2007-Ohio-2349, ¶ 12. We there continued:

> When the defendant's motion to suppress merely raises a generalized claim
> of inadmissibility * * *, the burden on the State is fairly slight. * * * Thus, the
> State must demonstrate compliance only in general terms when the motion
> to suppress raises issues in general terms. No specific evidence is required
> unless the defendant raises a specific issue in his or her motion.

(Internal citations omitted.)   *Id.,* quoting *Bissaillon* at ¶ 12.

{¶ 21} Here, we by analogy extend that reasoning to motions to suppress the results of field sobriety testing. Boles's motion to suppress did not criticize any specific aspects of Dep. Fizer's administration of the field sobriety tests, but merely averred

---

[2] Given that conclusion, we need not address whether the specific acts or omissions Boles now advances in fact constituted departures from NHTSA standards.

generally that such tests failed to substantially comply with NHTSA standards. After offering hearing testimony that provided a detailed summary of the tests he administered to Boles (Tr. p. 35-44), Dep. Fizer affirmed that he had "administered th[o]se tests per the standards of the NHTSA manual." (Tr. p. 44.) Defense counsel's cross-examination of Dep. Fizer did not take issue with his execution of any particular portion of the field sobriety testing he conducted. As a result, the State satisfied its burden to demonstrate substantial compliance with NHTSA testing standards, commensurate with "the level with which [Boles took] issue with the legality of the test." *See Conley* at ¶ 7.

{¶ 22} Boles cites a single decision of another Ohio appellate court as support for the proposition that Dep. Fizer's testimony was insufficient to establish that he administered the field sobriety tests to Boles in substantial compliance with the NHTSA manual. *See Cleveland v. Krivich*, 2016-Ohio-3072, 65 N.E.3d 279 (8th Dist.). That decision is inapposite. In *Krivich*, the testifying officer affirmatively acknowledged that he had deviated from NHTSA standards while administering field sobriety tests to the defendant. For example, the officer admitted that he did not ask whether the defendant wore contact lenses, that he used his finger instead of a pen to conduct the HGN test, and that "he did not time [the defendant] during the one-leg stand test." *Id.* at ¶ 8. Dep. Fizer made no such admissions. Although his summary description of administering field sobriety tests to Boles made no mention of giving Boles instructions prior to the HGN test or of timing Boles during the OLS test, Fizer never stated that he failed to comply with those NHTSA testing expectations. (*See* Tr. p. 35-44.) Rather, he testified that he had administered Boles's field sobriety tests "per the standards of the NHTSA manual." (*Id.* at p. 44.)

{¶ 23} Thereafter, defense counsel did not question Dep. Fizer about the now-challenged details of the field sobriety tests Fizer administered to Boles. Accordingly, unlike the facts in *Krivich,* nothing in the record before us directly contradicts Dep. Fizer's testimony that he fully complied with NHTSA testing standards.

{¶ 24} Given the sheer volume of the NHTSA standards applicable to field sobriety testing,[3] requiring a witness to accurately recount how the testing he or she administered encompassed each and every element of such standards, even when no specific challenge has been raised, would pose an undue and unreasonable burden. As observed by another Ohio appellate court, again in the context of chemical tests in OVI cases, permitting such a "shotgun" approach in motions to suppress would allow defendants to "essentially regurgitate[ ] the [applicable standards] and then wait[ ] for the police officer to forget to testify about one of the aspects of compliance." (Citation omitted.) *State v. Richards*, 2016-Ohio-3518, 67 N.E.3d 147, ¶ 8 (1st Dist.).

{¶ 25} We decline to endorse the use of such broad attacks on field sobriety testing. Requiring instead that the State prove law enforcement officers' adherence to the specific requirements of field sobriety testing actually put at issue by the defendant's motion to suppress or through cross-examination during a suppression hearing provides adequate assurance that field sobriety tests were administered "in substantial compliance with [applicable] testing standards." *See* R.C. 4511.19(D)(4)(b). The State did so in this case.

{¶ 26} Having concluded that the State established Det. Fizer's compliance with

---

[3] According to the State, the current version of the NHTSA manual contains "95 pages * * * devoted to the administration of field sobriety tests." (Reply Brief of Appellant, p. 2).

NHTSA standards to an extent commensurate with the challenge raised by Boles prior to or during the suppression hearing, we determine that the trial court erred by deeming the evidence insufficient to establish substantial compliance, and therefore suppressing the results of the field sobriety tests. The State's assignment of error on that basis is sustained.

b. *Lack of video recording*

{¶ 27} In light of the trial court's failure to articulate the factual basis for its conclusion regarding NHTSA standards, we also have considered whether the trial court properly could have suppressed the field sobriety test results based simply on the lack of physical evidence to corroborate Fizer's testimony. We conclude that it could not.

{¶ 28} As observed by the Ohio Supreme Court, "a video recording of the field sobriety test" constitutes "[t]he primary source of evidence normally available to an OVI defendant." *State v. Codeluppi*, 139 Ohio St.3d 165, 2014-Ohio-1574, 10 N.E.3d 691, ¶ 14. Nevertheless, the availability of such a recording is not determinative of the *admissibility* of field sobriety test results. *See, e.g., Athens v. Gilliland*, 4th Dist. Athens No. 02CA4, 2002-Ohio-4347, ¶ 1 (reversing decision that granted motion to suppress, as failure to record field sobriety testing "is not fatal to the [S]tate's case"). Numerous Ohio appellate courts, including this court, have noted that there is no legal requirement that field sobriety tests be recorded. *See State v. Pace*, 3d Dist. Hancock No. 5-12-30, 2013-Ohio-2143, ¶ 18-20, citing *State v. Smith*, 5th Dist. Licking No. 09-CA41, 2010-Ohio-1232, ¶ 44-45; *State v. Delarosa,* 11th Dist. Portage No. 2003-P-0129, 2005-Ohio-3399, ¶ 48 (NHTSA standards do not require field sobriety tests to be videotaped); *State v. McDade,* 12th Dist. Warren Nos. CA2003-09-096, CA2003-09-097, 2004-Ohio-3672, ¶ 17 (failure

to make video of field sobriety tests did not violate due process); *Gilliand* at ¶ 5; *State v. Shepherd,* 2d Dist. Clark No. 2002-CA-55, 2002-Ohio-6383, ¶ 27; *State v. Wooten,* 4th Dist. Athens No. 01 CA31, 2002 WL 488, *4 (Mar. 25, 2002).

{¶ 29} In *Shepherd*, we "approve[d] and follow[ed]" the Fourth District's decision in *Wooten*, holding that, "[i]n the absence of bad faith, the failure of a police officer to cause a videotape or audiotape record to be made of that officer's encounter with a suspect does not violate the suspect's constitutional right to due process of law under the Fourteenth Amendment to the United States Constitution." *Shepherd* at ¶ 27. In the instant case, we again find *Wooten* persuasive as to its conclusion that, "[b]ecause no constitutional violation arises merely from a law enforcement officer's failure to employ a particular investigative tool, the suppression of evidence * * * is not warranted" by an officer's negligent failure to capture field sobriety testing on camera. *Wooten* at *4.

{¶ 30} In granting Boles's motion to suppress, the trial court neither identified any specific deficiencies in the testing procedures testified to by Dep. Fizer, nor found Dep. Fizer to lack credibility. Significantly, the trial court also did not suggest that Dep. Fizer's failure to record Boles's performance of the field sobriety tests was the product of bad faith, and nothing in the record would support a bad faith finding. Although the record lacks objective physical evidence to corroborate Fizer's testimony, the lack of a video recording implicates the weight to be given, not the admissibility of, that testimony. Under the applicable statute, the trial court "*shall* admit the testimony or evidence" when a proper foundation is laid, and the weight to be accorded that evidence is to be determined by the trier of fact. (Emphasis added.) R.C. 4511.19(D)(4)(b)(iii).

{¶ 31} Because the trial court erred in suppressing the field sobriety test results

where nothing rebutted the officer's testimony that the tests were administered in accordance with NHTSA standards and nothing suggested that the officer's failure to video-record those tests was a product of bad faith, the State's first assignment of error is sustained.

**Assignment of Error #2 – Probable Cause to Arrest**

{¶ 32} In its second assignment of error, the State contends that the trial court erred in concluding that Deputy Fizer lacked probable cause to arrest Boles for violating R.C. 4511.19(A)(1)(a)'s prohibition on operating a vehicle while under the influence of alcohol. The State maintains that even absent the results of the field sobriety tests administered to Boles, the totality of the circumstances demonstrates that probable cause existed for that arrest. While the significance of that argument is lessened by our conclusion that the field sobriety test results should not have been suppressed, we nonetheless agree with the State's position.

{¶ 33} "Probable cause to arrest exists when a reasonably prudent person would believe that the person to be arrested has committed a crime." *State v. Adams*, 2d Dist. Montgomery No. 24184, 2011-Ohio-4008, ¶ 7, citing *State v. Timson*, 38 Ohio St.2d 122, 311 N.E.2d 16 (1974). In determining whether probable cause exists, the court considers the totality of circumstances surrounding the arrest. *State v. Thomas*, 2d Dist. Montgomery No. 21430, 2006-Ohio-6612, ¶ 9; *State v. Turner*, 2016-Ohio-7983, 74 N.E.3d 858, ¶ 19 (2d Dist.).

{¶ 34} The offense for which Boles was arrested is defined as follows:

(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley

within this state, if, at the time of the operation, any of the following apply:

(a) The person is under the influence of alcohol, a drug of abuse, or a

combination of them.

R.C. 4511.19(A)(1)(a).

{¶ 35} An individual's performance on field sobriety tests is one means of showing that he or she was under the influence of alcohol. *See State v. Donovan*, 2d Dist. Clark No. 02CA0052, 2003-Ohio-1045, ¶ 25. However, " '[p]robable cause to arrest does not have to be based, in whole or in part, upon a suspect's poor performance on one or more field sobriety tests.' " *State v. Louis*, 2d Dist. Montgomery No. 27268, 2017-Ohio-8666, ¶ 42, quoting *Columbus v. Bickis*, 10th Dist. Franklin No. 09AP-898, 2010-Ohio-3208, ¶ 21. "Rather, '[t]he totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered[.]' " *Id.*, quoting *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000), *superseded by statute on other grounds as recognized in Boczar*, 113 Ohio St.3d 148, 2007-Ohio-1251, 863 N.E.2d 155. *See also* R.C. 4511.19(D)(4)(c) (disallowance of field sobriety test results under R.C. 4511.19(D)(4)(b) "does not limit or preclude a court * * * from considering [other] evidence or testimony" in determining "whether the arrest of a person was supported by probable cause").

{¶ 36} We previously have found probable cause for arrest to exist in cases where no chemical or field sobriety test results were admitted. For example, in *State v. Barger*, 2017-Ohio-4008, 91 N.E.3d 277 (2d Dist.), this court determined that probable cause existed for the OVI arrest of a driver who turned left in front of a motorcyclist; smelled of alcohol; had glassy, bloodshot, and dilated eyes; was quiet and looked down and away when speaking to the arresting officer; and responded in an abnormal, stiff manner to the

officer's question about alcohol consumption. *Id.* at ¶ 17.

{¶ 37} The facts here arguably are even more indicative of intoxication than those in *Barger*. Dep. Beach saw Boles swerve into a stationary vehicle parked in a location where Beach opined that contact could have been easily averted. Both Beach and Dep. Fizer testified that Boles smelled strongly of alcohol and had glassy, bloodshot eyes and slurred speech. Boles admitted to drinking four beers that night, two of which were consumed in the bar from which he was departing when the accident occurred, and the bartender at that bar confirmed that she had served Boles what she recalled as two "tall ones." Furthermore, Dep. Fizer testified that Boles was "having trouble walking straight" upon exiting his SUV; Fizer said Boles "kind of staggered" toward Fizer's cruiser. (Tr. p. 34.)

{¶ 38} Even without Dep. Fizer's testimony regarding Boles's performance on the specific field sobriety tests the deputy administered, substantial credible, competent evidence showed that Dep. Fizer had a reasonable basis to believe that Boles had driven his vehicle while under the influence of alcohol. Despite the trial court's allusion to "inconsistencies, gaps and omissions" in the evidence the State presented at the suppression hearing (1/28/20 Decision & Entry on Defendant's Motion to Suppress, p. 6), relatively minor discrepancies in a witness's testimony ordinarily will not warrant the exclusion of evidence. *See, e.g., State v. Talbott*, 8th Dist. Cuyahoga No. 89630, 2008-Ohio-961, ¶ 20; *State v. McNeal*, 3d Dist. Allen No. 1-01-158, 2002-Ohio-2981, ¶ 42. Our review of the evidence reveals no discrepancies significant enough to undermine the existence of probable cause.

{¶ 39} Although Dep. Fizer acknowledged that the written report he prepared indicated that he did *not* detect the odor of alcohol on Boles (*see* Tr. Exh. A), he explained that he accidentally checked the wrong box on the report form. (Tr. p. 54.) His testimony that Boles actually did smell strongly of alcohol was substantiated by Det. Beach's testimony. Similarly, Fizer's mistaken checking of the "video" box on his written report had little or no bearing as to the probable cause issue; Det. Fizer testified that he initially believed that Boles's field sobriety tests had been recorded, and he learned only later that they had not been. Other minor differences the trial court identified between Fizer's testimony and his written report – i.e., that the report did not reflect that Boles's eyes were bloodshot or that he appeared nervous, and did not include certain oral statements Fizer's testimony attributed to Boles – likewise did not significantly detract from the totality of the facts and circumstances suggesting that Dep. Fizer had a reasonable basis for believing that Boles had operated his vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1)(a).

{¶ 40} We conclude that the trial court erred in finding that Dep. Fizer lacked probable cause to arrest Boles for OVI, as the totality of the circumstances supported a conclusion that probable cause existed for that arrest. The State's second assignment of error is sustained.

## Conclusion

{¶ 41} For the foregoing reasons, the trial court's decision granting Boles's motion to suppress evidence is reversed, and this matter is remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.


Copies sent to:

Nolan C. Thomas
Angelina N. Jackson
Hon. Frederick W. Dressel