[Cite as *State v. Hamilton*, 2021-Ohio-1421.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-200041 |
| | | C-200042 |
| Plaintiff-Appellee, | : | TRIAL NOS. C-19TRC-34070A |
| | | C-19TRC-34070B |
| vs. | : | |
| CHYNA HAMILTON, | : | *O P I N I O N.* |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed in C-200041; Appeal Dismissed in
C-200042

Date of Judgment Entry on Appeal-: April 23, 2021

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Adam Tieger*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellant.

**CROUSE, Judge.**

{¶1}   Defendant-appellant Chyna Hamilton was convicted of operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19(A)(1)(a) and speeding in violation of R.C. 4511.21.  She has appealed, arguing in three assignments of error that (1) her right to due process was violated by the law enforcement officer's avoidance of the field of view of his police cruiser camera while administering the field-sobriety tests, (2) she was denied the effective assistance of trial counsel, and (3) her conviction for driving while under the influence of alcohol was based upon insufficient evidence and against the manifest weight of the evidence.  Hamilton does not challenge her speeding conviction.

{¶2}   Hamilton filed two notices of appeal, but both appeals address the same issues.  Therefore, we dismiss the appeal numbered C-200042.  In the appeal numbered C-200041, we overrule all assignments of error and affirm the trial court's judgment.

### *Factual Background*

{¶3}   Ohio State Highway Patrol Trooper Axel Lewis testified that on September 15, 2019, at approximately 3:00 a.m., he observed Hamilton speeding on Interstate 74.  Lewis pursued Hamilton, who pulled off at the next exit and pulled into a Walgreens parking lot.  Upon approaching the car, Lewis "immediately detected an odor of an alcoholic beverage."  Hamilton was in the driver's seat and her friend was in the passenger seat. Lewis testified that Hamilton had bloodshot and glassy eyes.  Lewis directed Hamilton to step out of the car and stand by the front passenger tire of his cruiser. Lewis testified that he smelled alcohol coming from Hamilton's person while standing there.

{¶4}    Lewis conducted three field-sobriety tests.  First, he conducted the Horizontal Gaze Nystagmus ("HGN") test, which involves holding a "stimulus" in front of the subject's eyes and moving it side to side according to a predetermined sequence. Lewis testified that Hamilton exhibited all six "clues" of impairment.

{¶5}    Lewis moved on to the "walk and turn" test.  He testified that Hamilton "broke heel to toe on every step" and that she demonstrated six out of the possible eight clues of impairment.  Finally, Lewis directed Hamilton to perform the "one-leg stand" test.  He testified that she demonstrated three out of the four possible clues of impairment.

{¶6}    Lewis testified that his cruiser was outfitted with two cameras, one pointed out the front windshield and another that showed the backseat, facing toward the passenger side.  The front camera is capable of swiveling to record either side of the cruiser, but cannot record behind the cruiser.  When asked why he did not record the field-sobriety tests, Lewis testified that he had to perform the tests behind his cruiser because the National Highway Traffic Safety Administration ("NHTSA") requires that the tests be performed on a flat surface. He explained that there was an incline in the front and on the sides of the cruiser, but it was flat behind the cruiser.

{¶7}    At trial, the prosecution admitted a DVD containing the video recordings from both cameras into evidence as state's exhibit 1. The prosecution played only portions of the video recordings from both cameras during the trial.

{¶8}    The prosecution played the video from the front camera when Lewis testified about the field-sobriety tests. The front camera video partially shows Hamilton and Lewis during the HGN test, but does not show the test itself. Hamilton and Lewis were completely out of view for the walk-and-turn and one-leg-stand tests,

3

but the front camera video did record audio from the tests. As Hamilton performed the tests, Lewis made notes into his microphone regarding her mistakes, and, while performing the one-leg-stand test, Hamilton said, "I can't do it!"

{¶9} Although the backseat camera video does not provide any clues as to how Hamilton performed on the tests, it reveals that the walk-and-turn and one-leg-stand tests were actually performed on the passenger side of the cruiser, and not behind the cruiser as Lewis had testified. Defense counsel did not point this out during the trial and this portion of the video was not played at trial; the prosecution only played the portion that showed Hamilton after she was arrested and placed in the backseat of the cruiser.

{¶10} Before rendering its verdict, the trial court stated that it wanted "to look at the video." In rendering its verdict, the trial court stated, "Ms. Hamilton, after looking at the DVD again, there's going to be a finding of guilty."

### *First Assignment of Error*

{¶11} In her first assignment of error, Hamilton contends that her conviction must be reversed because her right to due process was violated by Lewis's avoidance of the field of view of his cruiser camera while administering the field-sobriety tests.

{¶12} Hamilton did not object to Lewis's testimony regarding the field-sobriety tests or otherwise raise her due-process claim at the trial level. Thus, she has forfeited all but plain-error review. *See State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 23.

{¶13} To establish plain error pursuant to Crim.R. 52(B), Hamilton must show "(1) that an error occurred, (2) that the error was obvious, and (3) that the error affected the outcome of the trial. Notice of plain error under Crim.R. 52(B) is

4

to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." (Citation omitted.) *State v. Love*, 2017-Ohio-8960, 101 N.E.3d 623, ¶ 20 (1st Dist.).

{¶14} Hamilton argues that Lewis intentionally avoided administering the field-sobriety tests in view of the front cruiser camera, and lied when asked at trial why he did not record the tests. Because the backseat camera reveals that the tests were performed at the side of the cruiser and not the back, as Lewis testified, Hamilton contends that Lewis could have turned the front camera to record the tests and purposely chose not to. She argues that Lewis's bad-faith avoidance of the recording of potentially useful evidence is analogous to the bad-faith failure to preserve potentially useful evidence prohibited by the United States Supreme Court's decision in *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). In *Youngblood,* the Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id.*

{¶15} We find that *Youngblood* does not apply to Hamilton's case because her case involves the failure to create evidence, i.e., record the field-sobriety tests, and not the failure to preserve evidence that already existed. This is not a case where a video recording of the field-sobriety tests was destroyed. Rather, this is a case where a police officer chose not to create a video recording of the field-sobriety tests. In *Youngblood*, the Court held, "the police do not have a constitutional duty to perform any particular tests." *Id.* at 59. Thus, *Youngblood* does not require police officers to record field-sobriety tests.

**{¶16}** Several Ohio cases support our view that *Youngblood* does not apply to the failure of the police to create an audio or video recording, even if the recording could be potentially useful to the defense.

**{¶17}** In *State v. Wooten*, 4th Dist. Athens No. 01CA31, 2002 WL 488122, *3 (March 25, 2002), the Fourth District held that *Youngblood* is inapplicable to a police officer's failure to record field-sobriety tests. The court held that "[t]he Due Process Clause of the United States Constitution does not require the state to employ particular investigative techniques to the defendant's liking." *Id.* The court went on to explain:

> [T]he issue in the case at bar is not whether the state failed to disclose favorable evidence to appellee or whether the state failed to preserve potentially useful evidence. Rather, appellee's claim is that the state violated his due process rights by failing to use a particular investigatory tool. In *Youngblood*, the court discounted this argument as follows: "The situation is no different than a prosecution for drunken driving that rests on police observation alone; the defendant is free to argue to the finder of fact that a breathalyzer test might have been exculpatory, but the police do not have a constitutional duty to perform any particular tests."

*Id.*, quoting *Youngblood* at 59. The court held that the state "has no constitutional duty to ensure that DUI defendants' traffic stops and sobriety tests are recorded on video or audio tape." *Wooten* at *4. *See State v. McDade*, 12th Dist. Warren Nos. CA2003-09-096 and CA2003-09-097, 2004-Ohio-3672, ¶ 17 ("Rather than a case of destruction of evidence, this case is more akin to a case of failing to create evidence").

{¶18} In *City of Cleveland v. Brown*, 8th Dist. Cuyahoga No. 80112, 2002-Ohio-2139, ¶ 1, the defendant argued that her due-process rights were violated by the state's failure to obtain a video or audio recording of the sting operation that led to her arrest for soliciting prostitution. The court found that her argument failed for two reasons. First, it found that *Youngblood* and *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984)[1] only apply if a defendant can establish that *existing evidence* was not preserved. *Brown* at ¶ 11. "The audio tape, by default, does not exist." *Id.* Second, it found, "There is no constitutionally imposed duty to obtain evidence by employing any specific technological means." *Id.*

{¶19} We note that some Ohio appellate districts seem to have incorporated a bad-faith exception into the general rule that officers have no duty to record field-sobriety tests. *See, e.g., State v. Boles*, 2020-Ohio-4485, 158 N.E.3d 1013, ¶ 29 (2d Dist.) ("In the absence of bad faith, the failure of a police officer to cause a videotape or audiotape record to be made of that officer's encounter with a suspect does not violate the suspect's constitutional right to due process of law under the Fourteenth Amendment to the United States Constitution"); *State v. Smith*, 5th Dist. Licking No. 09-CA-42, 2010-Ohio-1232, ¶ 48, and *State v. Pace*, 3d Dist. Hancock No. 5-12-30, 2013-Ohio-2143, ¶ 21 (both courts cited the holdings in *McDade* and *Wooten*, but went on to consider whether the officers' failures to record the OVI stops were done in bad faith in violation of *Youngblood*). However, to the extent that those courts expanded the holding of *Youngblood* to a bad-faith failure to *create* evidence, we disagree with those holdings.

---

[1] *Trombetta* involved the failure of police to preserve the breath samples of defendants charged with DUI offenses where the charges were substantiated, in part, by breathalyzer results obtained directly before arrest.

**{¶20}** Like the court in *Wooten*, we too are sympathetic to Hamilton's frustration that Lewis did not record the field-sobriety tests when it seems it would have been easy to do so. But as the *Wooten* court stated:

> We believe that the officer's failure to use the audio and video equipment could properly be considered by the trier of fact, whether during a motion to suppress evidence hearing to determine the existence of probable cause to arrest or at a trial on the merits, in the exercise of its duty to assess witness credibility. In other words, a trier of fact could choose to discount an officer's testimony in view of the failure to collect audio and video evidence.

*Wooten*, 4th Dist. Athens No. 01CA31, 2002 WL 488122, at *4.

**{¶21}** Accordingly, we hold that the *Youngblood* rule applies to a bad-faith failure to preserve evidence, not a bad-faith failure to create evidence. Lewis was under no duty to record the field-sobriety tests and his failure to record the tests did not violate Hamilton's due-process rights. The first assignment of error is overruled.

### Second Assignment of Error

**{¶22}** In her second assignment of error, Hamilton contends that she was denied the effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution. Specifically, Hamilton argues that her trial counsel was ineffective for not raising the due-process claim and for not playing the portions of the backseat camera video that showed that the field-sobriety tests were conducted at the side of the police cruiser and not behind the cruiser as Lewis testified.

**{¶23}** To establish an ineffective-assistance-of-counsel claim, an appellant must show (1) that counsel's performance was deficient, and (2) that the deficient

performance prejudiced the defense, thereby depriving appellant of a fair trial. *State v. Smith*, 1st Dist. Hamilton No. C-180151, 2019-Ohio-5264, ¶ 63, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

**{¶24}** Regarding the second prong, prejudice requires that there be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), citing *Strickland* at 694. This requires a showing that counsel's errors were "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland* at 687.

**{¶25}** "A defendant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other." *State v. See*, 1st Dist. Hamilton Nos. C-190251 and C-190252, 2020-Ohio-2923, ¶ 61, quoting *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

**{¶26}** Because Lewis had no duty to record the field-sobriety tests, Hamilton has not shown that there is a reasonable probability that her due-process claim would have succeeded. She also has not shown that there is a reasonable probability that the outcome of the trial would have been different had counsel played the portions of the backseat camera video and noted that Lewis's testimony about where the tests were conducted was incorrect. The entire backseat camera video was on the DVD labeled state's exhibit 1, and the trial court stated that it had reviewed the DVD prior to reaching a verdict. Thus, we must presume that the trial court reviewed the backseat camera video, which revealed that the tests were conducted at the side of the police cruiser. Nevertheless, the trial court found Lewis's testimony to be

credible. Because Hamilton has failed to demonstrate prejudice, the second assignment of error is overruled.

### *Third Assignment of Error*

{¶27} In her third assignment of error, Hamilton argues that her conviction for driving while under the influence of alcohol was based upon insufficient evidence and against the manifest weight of the evidence.

{¶28} The test for determining the sufficiency of the evidence is whether "after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt." *State v. MacDonald*, 1st Dist. Hamilton No. C-180310, 2019-Ohio-3595, ¶ 12, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). It is a question of law for the court to determine, the court is not to weigh the evidence. *MacDonald* at ¶ 12. "When evidence is susceptible to more than one construction, a reviewing court must give it the interpretation that is consistent with the judgment." *In re J.C.,* 1st Dist. Hamilton No. C-180493, 2019-Ohio-4027, ¶ 20.

{¶29} In reviewing a claim that a conviction is against the manifest weight of the evidence, "we review the record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the trier of fact, in resolving conflicts in the evidence, 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned.' " *Martin,* 20 Ohio App.3d at 175, 485 N.E.2d 717. Reversal of a conviction and a grant of a new trial should only be done in "exceptional cases in which the evidence weighs heavily against the conviction." *Id.* "The trier of fact is in the best position to judge the

credibility of the witnesses and the weight to be given to the evidence presented." *State v. Carson*, 1st Dist. Hamilton No. C-180336, 2019-Ohio-4550, ¶ 16.

{**¶30**} R.C. 4511.19(A)(1)(a) provides, "No person shall operate any vehicle * * * within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol." To prove that Hamilton was "under the influence of alcohol," it was not necessary for the state to prove a particular level of alcohol concentration in her body. *See State v. Bakst*, 30 Ohio App.3d 141, 146, 506 N.E.2d 1208 (1st Dist.1986). Rather, the state was required to prove that Hamilton had consumed alcohol in a quantity that had "adversely and appreciably impaired her actions or mental processes and deprived her of that clearness of intellect and control of herself which she would otherwise have had." *See State v. Hall*, 2016-Ohio-783, 60 N.E.3d 675, ¶ 29 (1st Dist.), quoting *Bakst* at 145.

{**¶31**} Lewis testified that Hamilton was speeding, smelled of alcohol, and had bloodshot and glassy eyes. Moreover, he testified that her performance on the field-sobriety tests exhibited impairment. Hamilton's conviction was based upon sufficient evidence.

{**¶32**} Regarding her argument that her conviction was against the manifest weight of the evidence, Hamilton contends that the trial court clearly lost its way in accepting Lewis's testimony and the results of the field-sobriety tests because the tests were not recorded. However, not only did Lewis testify about Hamilton's poor performance on the tests, the cruiser camera audio revealed that he noted the clues of impairment into his microphone as Hamilton performed the tests. In addition, Hamilton admitted that she could not do the one-leg-stand test. Thus, the trial court did not clearly lose its way in believing Lewis's testimony about Hamilton's poor

performance on the tests. Hamilton's conviction was not against the manifest weight of the evidence. The third assignment of error is overruled.

### *Conclusion*

{¶33} The appeal numbered C-200042 is dismissed. In the appeal numbered C-200041, all assignments of error are overruled, and the judgment of the trial court is affirmed.

Judgment accordingly.

**MYERS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.